11 P.3d 828 (2000)
103 Wash.App. 20
STATE of Washington, Respondent,
v.
Holofa CROWDER, Appellant.
No. 41651-1-I.
Court of Appeals of Washington, Division 1.
September 5, 2000.
As Amended and Publication Ordered October 27, 2000.
*829 Thomas Michael Kummerow, Seattle, for Appellant.
Lynn S. Prunhuber, Deputy Prosecuting Attorney, Seattle, for Respondent.
ELLINGTON, J.
Holofa Crowder was convicted of one count of theft in the first degree for embezzlement of funds from the estate of Vincent Burns. Crowder challenges the trial court's admission of Burns' out-of-court statements, which related primarily to her management of his financial affairs. She also claims there was insufficient evidence on which to base her conviction.
We conclude that only one of the six challenged statements was arguably hearsay, and that its admission was completely harmless. We further find the evidence more than sufficient to support the verdict, and accordingly affirm.
FACTS
In 1990, Vincent O. Burns was a 79-year-old retired accountant. After his wife of over 50 years died in 1989, Burns deteriorated. He began drinking heavily, and where he had once been a meticulous housekeeper, he began to allow his condominium and personal condition to fall into disrepair. Following hospitalization for a broken wrist, Burns hired Holofa Crowder through Extra Care Services to serve as his caretaker. Crowder's duties included making meals and cleaning house for Burns.
In October 1990, Burns contacted the attorney who had drafted his will, Gerald Treacy, and indicated that he wished to adopt Crowder. Treacy advised against it, and Burns decided not to proceed with the adoption at that time.
In March 1991, Burns was again hospitalized. Crowder told Karen Smith, a hospital social worker, that Burns recently asked her to take over managing his finances. Crowder explained that Burns was becoming *830 more forgetful, and that he was showing other signs that indicated mild dementia.
In September 1991, Burns purchased a West Seattle condominium for Crowder. Burns withdrew income-producing assets from his Merrill Lynch stock and bond fund, and paid $157,500 cash for the furnished condominium. Jean Watson, a legal assistant who worked with Burns and his attorneys, testified that Burns was not thinking clearly, and was unaware of financial implications which would have been clear to him before his decline. Although Burns initially stated that he wished to purchase the condominium in Crowder's name, ultimately the purchase was made in his name.
On March 2, 1992, while Burns was again hospitalized, Crowder had him quitclaim the West Seattle condominium to her. The next day, following a consultation with Treacy, who had come to visit him in the hospital, Burns tore up the quitclaim deed.
Later that month, Burns again indicated that he wished to adopt Crowder and leave his entire estate to her. Treacy refused to assist and resigned as his counsel.
On June 18, 1992, Burns signed a durable power of attorney in favor of Crowder, effective upon Burns' disability or incompetency. Ultimately, in July 1992, Burns legally adopted Crowder, who was then designated the sole beneficiary in Burns' will.
In 1993, Burns' neighbors and acquaintances began to express concern over his care and finances. The waitress at Burns' favorite restaurant noticed he no longer had his credit cards. She also noted that Crowder controlled and limited what Burns ate, and complained that the meals were costing her too much money.
In early 1993, Burns had approximately $230,000 in his Merrill Lynch account. Crowder withdrew all of it by the end of the year, and transferred it to her own personal account. She used the money for various investments including vacation time shares, an annuity in her name, loans or gifts to friends, a new car, and travel.
In March 1994, the Adult Protective Services Division of the Department of Social and Health Services (DSHS) investigated a claim that Burns was suffering from neglect and financial exploitation by Crowder. An APS officer, James Taylor, interviewed both Burns and Crowder. Burns did not want the case to be pursued further, and the investigation was closed.
In December 1994, Burns' neighbors noticed that Crowder was absent for long periods of time. Crowder ceased cooking, cleaning and caring for Burns. On occasion, Burns was left unshaven and unbathed, in dirty clothing, with no food or moldy fast food left out on the counter, and no heat in the winter.
On January 20, 1995, Burns and a neighbor went to see attorney Susan Lybeck. Burns told Lybeck he did not have his wallet, Social Security card, checkbook, or driver's license. Burns wanted to obtain title to his condominiums, determine where his assets were, revoke Crowder's power of attorney, and change his will to exclude Crowder. Lybeck prepared a revocation of the living trust, a revocation of the durable power of attorney, and a new will, which Burns signed. Burns also contacted the Bellevue Police Department to make a report of theft and fraud.
Through the rest of January and early February, 1995, Burns alternated between wanting Crowder excluded entirely from his financial affairs and demanding that she have complete control over them. When Lybeck refused to draft a power of attorney and a new will reinstating Crowder as Burns' beneficiary, he effectively fired her.
On February 14, 1995, DSHS petitioned King County Superior Court to appoint a guardian for Burns. The guardianship court issued a temporary restraining order, which was served on Crowder. On February 28, in a hearing attended by Crowder, the court issued an order granting a preliminary injunction, prohibiting Crowder from making "any change in the personal or financial affairs of Vincent O. Burns, including but not limited to the donation, sale or other disposition of any personal or real property." The following day, Crowder violated the restraining order by again having Burns quitclaim the West Seattle condominium to her.
*831 On April 12, 1995, the court appointed a guardian for Vincent Burns. His estate had been worth approximately $585,000 when he met Crowder in early 1990. When the guardian was appointed, Burns had approximately $50,000 remaining in assets.
On April 27, 1995, the guardian ad litem had Burns examined by Dr. Leslie Althouse, a specialist in geriatric medicine. Dr. Althouse diagnosed Burns as suffering from frontal lobe dementia, which may affect higher critical functioning such as decisionmaking. Dr. Althouse later testified that Burns was probably suffering from dementia as early as 1990 or 1991.
On July 15, 1996, the State charged Holofa Crowder with one count of theft in the first degree by embezzlement. The State alleged that Crowder had exerted unauthorized control over the Burns' estate during the five-year period of June, 1990 through April, 1995.
The jury found Crowder guilty. The court imposed an exceptional sentence of 24 months. Crowder appeals her conviction.
DISCUSSION
I. Admissibility of Burns' Out of Court Statements
Determining whether evidence is admissible is within the discretion of the trial court and will be reversed only upon a showing of manifest abuse of discretion. State v. Bourgeois, 133 Wash.2d 389, 399, 945 P.2d 1120 (1997). A court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
Crowder challenges admission of six out-of-court statements made by Burns. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Whether a statement is hearsay depends upon the purpose for which the statement is offered. Statements not offered to prove the truth of the matter asserted, but rather as a basis for inferring something else, are not hearsay. State v. Collins, 76 Wash.App. 496, 498-99, 886 P.2d 243 (1995).
The first statement at issue was Burns' comment to a neighbor, Audrey Erickson, who visited Burns because she was concerned about his well-being. Erickson testified that in response to her inquiries regarding his welfare, Burns responded, "my adopted daughter has taken care of everything." Crowder objected to the testimony, alleging hearsay. The trial court allowed the statement as circumstantial evidence of Burns' state of mind, showing that he had "reposed his complete confidence in and dependency upon his daughter (Crowder) to provide for his needs."
Burns' statement to Erickson was not admitted to prove that Crowder had actually "taken care of everything," the matter asserted by the declaration. Rather, the testimony went to Burns' state of mind, his reliance on Crowder's supervision of his affairs. The statement is not hearsay under ER 803(a)(3).
The second statement at issue was Burns' remark to a legal assistant in regard to Crowder's spending, that he was going to "pull in the purse strings" after the purchase of the West Seattle condominium. This statement also was admissible as evidence of the existing mental or emotional condition, showing the intent of the declarant at the time spoken. ER 803(a)(3). The statement was not offered to prove that Burns "pull(ed) in the purse strings," which he did not do, but rather to serve as circumstantial evidence of Crowder's influence.
The third and fourth statements challenged by Crowder were made by Burns to the social worker from Adult Protective Services, James Taylor. Taylor testified that in response to his inquiries regarding the specifics of Burns' financial situation, Burns "indicated that he had turned over management of his affairs to Miss Crowder." Taylor explained that in reference to his finances, Burns "couldn't give ... any particulars, or didn't give ... any particulars on it." This testimony was admitted not to show that Burns had turned his affairs over to Crowder or that Burns refused to describe his assets *832 to Taylor, but rather as circumstantial evidence that Burns did not comprehend his own financial situation at the time he met with Taylor. Once again, the challenged statements manifest the declarant's state of mind, and thus are admissible.
Crowder also opposed the admission of Taylor's testimony that he overheard Burns tell Crowder on the telephone that "the [Adult Protective Services] worker had voiced concerns as to her management of his money." However, the truth of Burns' statement was not pertinent, since it was Burns himself who had expressed the concern. The probative value of the statement went to Crowder's influence over Burns. The statement was properly admitted as circumstantial evidence illustrating Burns' effort to shift the scrutinizing role from himself to APS, and was relevant only to his state of mind regarding his relationship with Crowder.
The last two out-of-court statements challenged by Crowder were presented during the testimony of Burns' attorney, Susan Lybeck. Lybeck testified that on January 25, 1995, Burns stated, "I want Holofa to be my guardian, she's my daughter, I want Holofa to be my Power of Attorney." Again, Burns' declaration was a statement of intent and motive, and thus excepted from the hearsay rule. ER 803(a)(3).
Finally, Lybeck testified as to Burns' response to her inquiries regarding the discrepancy between the initial purchase price of the West Seattle condominium, $150,000, and the final purchase price of $157,500. Burns indicated that Crowder "had liked the furniture so much, and so had asked that the furniture be included." Burns' statement does in part go to the truth of the matter asserted. The assertion was that Crowder liked the furniture, and the further implication was that Burns was influenced to expend additional funds for her benefit. Although the admission of this statement was again primarily for the purpose of illustrating Crowder's power of persuasion over Burns, it also stood for the truth of the matter asserted. However, the truth of the statement was undisputed. Even if the statement was partly hearsay, any error in its admission was therefore completely harmless. Further, although the statement was objected to, no limiting instruction was requested.
II. Sufficiency of the Evidence
Crowder challenges the judgment for lack of sufficient evidence on which to base a conviction. In reviewing a challenge to the sufficiency of the evidence in a criminal case, the test is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980), citing Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citation omitted).
Crowder was charged and convicted of theft in the first degree, which involves the exertion of "unauthorized control" over the property of another, valued in excess of $1,500. RCW 9A.56.020(1)(a). Crowder asserted the statutory defense of good faith claim of title under RCW 9A.56.020(2) based on her legally assigned durable power of attorney over Burns' financial affairs.
The evidence here is very strong that Crowder's actions were unauthorized. First, her reliance on the durable power of attorney is entirely misplaced. Crowder was not authorized by the power of attorney to make gifts of Burns' property. This is specifically prohibited by statute, unless expressly provided for in the document. RCW 11.94.050(1).
Second, it is undisputed that in March 1995, following the revocation of her power of attorney, and in violation of a court-ordered injunction, Crowder persuaded a mentally frail Burns to quitclaim his Bellevue condominium to her. The February preliminary injunction explicitly prohibited Crowder from "making any change in the personal or financial affairs of Vincent O. Burns." Both Crowder's persuasion of Burns to transfer property and her acceptance of the deed *833 violated the injunction and were "unauthorized." This transfer of property alone is sufficient evidence to support Crowder's conviction for theft in the first degree.
Affirmed.
BAKER, J., and GROSSE, J., concur.