# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 74124-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MITCHELL HENRY RAMM, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 17, 2017 |
| | ) | |

APPELWICK, J. — Ramm was convicted of assault in the second degree while armed with a deadly weapon. He argues that the trial court erred in excluding his statements made at the time of his arrest, because these statements were not hearsay. We affirm.

## FACTS

On May 18, 2014, John McKissick was working as a security officer at the Woodland Park Zoo. McKissick was not armed, but carried a flashlight. At around 8:00 a.m., McKissick came into contact with a man who was camping near the rose garden. The man was Mitchell Ramm. McKissick approached Ramm, who was in a sleeping bag. At about 10 feet away from Ramm, McKissick stopped. McKissick repeatedly told Ramm that he was not allowed to camp there.

Ramm refused to leave. He said that McKissick should be paying him rent for being in his space. After telling Ramm to leave three or four times, McKissick informed Ramm that if he did not leave, McKissick would have to call the Seattle Police Department to remove him. McKissick then left the area and called 911.

While McKissick was on the phone with 911, Ramm approached him, yelling. Ramm attempted to provoke McKissick, calling him a chicken for not physically engaging him. When McKissick did not respond, Ramm became more aggressive. He began swinging at McKissick, attempting to punch him in the face. McKissick protected himself by blocking Ramm's hands. Ramm then pulled two wooden billy clubs out of his pocket and attempted to hit McKissick in the head. He struck McKissick about six times.

Throughout the encounter, McKissick was backing away, trying to avoid being hit. As he backed away, he tripped and fell in a ditch. There, McKissick found several bicycle parts that he used to defend himself. Ramm threw a pallet at McKissick, and then began throwing pieces of cement at McKissick.

By this time, other people had become aware of the incident and were gathering nearby. When Ramm noticed the growing crowd, he sat down on a picnic bench nearby. The police arrived about 30 seconds later. Ramm was compliant with the officers, obeying their commands and putting his arms behind his back to be handcuffed.

Ramm was charged with assault in the second degree. The State also alleged that Ramm was armed with a deadly weapon, the wooden clubs, at the time of the assault. At trial, Ramm pursued a diminished capacity defense. He

2

argued that because of his mental illness, he could not form the requisite intent to assault McKissick. Ramm was convicted as charged. He appeals.

## DISCUSSION

Ramm argues that the trial court erred in excluding statements he made at the time of his arrest. He contends that these statements were not hearsay, because they were not offered to prove the truth of the matter asserted. Alternatively, he suggests the excited utterance hearsay exception applies, and his trial counsel provided ineffective assistance by failing to argue this exception. The State argues that even if the trial court erred, the exclusion of these statements was not prejudicial.

When reviewing evidentiary decisions, we first determine the applicable evidentiary rules and then decide whether the trial judge acted within the discretion given by those rules. State v. Gunderson, 181 Wn.2d 916, 921-22, 337 P.3d 1090 (2014). We review the trial court's decision to admit or exclude evidence for abuse of discretion. Id. at 922. The court abuses its discretion where its decision is manifestly unreasonable or based upon untenable grounds. Id.

### I. Hearsay

Ramm contends that the trial court erred in excluding his out-of-court statements to police officers as hearsay. When police officers first arrived on the scene, Ramm said something along the lines of, "[W]hy are you arresting me, you should be arresting the other guy." Ramm may have also said, "He attacked me."

Pretrial, the State sought to suppress these statements as inadmissible hearsay. Ramm argued that the statements were not hearsay, because they were

offered to show his state of mind, not to prove the truth of the matter asserted. Ramm contended that these statements would support his diminished capacity defense by showing that Ramm's mental illness affected his ability to form intent. The court ruled,

> So on its face this, of course, is not a statement that one would view as unusual or without more evidence of a diminished capacity. It has the hallmarks of an out-of-court assertion that hangs one's self in a better light, and is offered for the truth of the matter; but it's not his fault, it's the other guy's fault. So, with that, I do not find that the state of mind exception would allow this to be admissible.

Consequently, it granted the State's motion to exclude the statements.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Whether a statement is hearsay depends upon the purpose for which the statement is offered. State v. Crowder, 103 Wn. App. 20, 26, 11 P.3d 828 (2000). When a statement is offered not to prove the truth of the matter asserted, but instead as a basis to infer something else, the statement is not hearsay. Id.

Here, Ramm did not argue that McKissick attacked him first or that he was acting in lawful self-defense. He did not offer the statements to prove the truth of the matter asserted. Instead, Ramm sought to use the statements to show his state of mind at the time of the altercation. He offered these statements to show his objectively false belief that he was acting in self-defense. This was consistent with Ramm's diminished capacity defense: he argued that he lacked the capacity

4

to intentionally assault McKissick, because his mental illness caused him to believe he was defending himself. Thus, Ramm's statements were not hearsay.[1]

We conclude that the trial court erred in excluding Ramm's statements from the time of his arrest. Because we hold that these statements were not hearsay, we need not address whether they were otherwise admissible under the hearsay exception for excited utterances.

## II. Harmless Error

The State contends that even if the trial court erred in excluding the statements, this error was harmless. It argues that McKissick's testimony overwhelmingly demonstrated that Ramm instigated the altercation. And, it points out that Dr. Muscatel testified as to Ramm's version of events and gave his opinion that Ramm may have believed he was acting in self-defense.

A violation of an evidentiary rule is grounds for reversal only if it resulted in prejudice to the defendant. State v. Howard, 127 Wn. App. 862, 871, 113 P.3d 511 (2005). An error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

Here, the defense presented other evidence tending to show Ramm's state of mind at the time of the altercation. Defense counsel elicited testimony from eyewitnesses on cross-examination. Zookeeper Erin Martin testified that people

---

[1] The trial court excluded the statements in part because they were Ramm's own statements that painted him in a better light. But, there is no general rule that an out-of-court statement is inadmissible hearsay because it is self-serving. State v. Pavlik, 165 Wn. App. 645, 653, 268 P.3d 986 (2011). The fact that Ramm himself made and offered the statements did not convert them into hearsay.

approached Ramm to tell him to calm down, because he was very agitated, and that Ramm was rambling as he walked away. Bruce Walling, a grounds events coordination supervisor, described Ramm's demeanor as agitated and upset. Walling said that Ramm seemed "deranged." Ashley Pittman, who worked at the zoo on the day in question, heard Ramm talking to himself, but nothing he said made sense. She heard him say something about being a veteran and not wanting to go back overseas. Sonja Rosas, another zoo employee, heard Ramm say something about being in the war and having fought somebody. She testified that she thought something might be off about Ramm's mental state, because his words involving the war did not seem related to being kicked out of the zoo. Tonja Duncan, a warehouser at the zoo, testified that she wrote in her report of the incident that Ramm had quite a bit to say but none of it made sense.

And, two psychologists testified on Ramm's behalf. Dr. Wayne Winters is a psychologist employed by Western State Hospital. Dr. Winters performed a psychological evaluation of Ramm, based on Ramm's jail mental health records, prior Western State Hospital reports, and Dr. Winter's clinical observations of Ramm. Dr. Winters concluded that Ramm met the diagnostic criteria for schizophrenia.

Dr. Kenneth Muscatel also testified. Dr. Muscatel is a psychologist who evaluated Ramm in February and March 2015. After his evaluation of Ramm, Dr. Muscatel concluded that Ramm had a chronic severe mental illness. Dr. Muscatel believed that schizoaffective disorder was the best diagnosis, because that diagnosis incorporates hallucinations and delusional thinking. During Dr.

Muscatel's interview of Ramm, Ramm jumped from subject to subject and appeared to have grandiose and unrealistic thoughts. Ramm also explained that he found being homeless to be very stressful, placing him in threatening and vulnerable situations.

Dr. Muscatel relayed Ramm's version of the events that occurred on May 18, 2014. Ramm told Dr. Muscatel that he was confronted by someone who told him he had to leave, and he felt threated by the person. Ramm said that the person swung at him or hit him with a flashlight. He told Dr. Muscatel that he then took out two sticks and became very aggressive with the other person. From this interview, Dr. Muscatel concluded that Ramm was mentally ill on May 18 and not taking his medication at the time. . Dr. Muscatel opined that it was possible that Ramm, due to his mental state, believed that he was acting in self-defense and did not know the potential consequences of his actions.

Thus, Ramm was still able to present extensive evidence as to the nature of his mental illness. The jury heard that Ramm had a severe mental illness that caused delusions. It heard that being homeless created additional stress for Ramm. It heard that Ramm believed McKissick attacked him first. It heard that it was possible that Ramm believed he was defending himself. Ramm's statements at the time of his arrest were consistent with what Dr. Muscatel reported he was told and relied upon in forming his opinion of diminished capacity. But, admitting the statements would not have enhanced the expert opinion on which his defense relied nor would they have provided new information to the jury. Therefore, we conclude that there is not a reasonable probability that the outcome would have

been different had this error not occurred. The trial court's erroneous exclusion of Ramm's statements was harmless.

III.    Appellate Costs

Ramm argues that appellate costs should not be imposed. We agree. Ramm was determined to be indigent for purposes of appeal. No evidence suggests that Ramm's financial condition has improved or is likely to improve. Ramm is chronically mentally ill and has spent years of his life homeless. We presume that Ramm remains indigent. See State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016) (noting that the Rules of Appellate Procedure establish a presumption of continued indigency), review denied, 185 wn.2d 1034, 377 P.3d 733 (2016). An award of appellate costs to the State is not appropriate.

We affirm.

_Appelwick, J._

WE CONCUR:

_Dwyer, J._    _Trickey, A.C.J._

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 APR 17 AM 9: 45