45 P.3d 209 (2002)
111 Wash.App. 401
STATE of Washington, Respondent,
v.
Henry George SPENCER, Jr., Appellant.
State of Washington, Respondent,
v.
Henry George Spencer, Jr., Appellant.
Nos. 26165-1-II, 27555-4-II.
Court of Appeals of Washington, Division 2.
April 26, 2002.
*211 Rita Joan Griffith, Attorney At Law, Kevin R. Cole, Attorney At Law, Seattle, Counsel for Appellant (Court Appointed).
John Christopher Hillman, Pierce Co. Deputy Pros. Atty., Tacoma, Counsel for Respondent.
*210 HOUGHTON, J.
Henry George Spencer, Jr., appeals his conviction of drive-by shooting and witness tampering. Spencer argues that he was not allowed to call a witness to impeach the credibility of another witness and that the trial court erred in instructing the jury. We agree that the trial court erred in not allowing Spencer to call his witness. Therefore, we reverse this appeal and dismiss Spencer's linked appeal (Cause No. 27555-4-II) as moot.

FACTS
On October 17, 1999, between 4:30 and 5:00 A.M., someone fired a gun at Connie Beckmann's Tacoma home. Beckmann's 18-year-old daughter, Jessica Brayton, was in a romantic relationship with Spencer. Earlier that evening and that morning, Spencer had tried to reach Brayton by cellular telephone while Brayton was staying with a friend. The last call Brayton received from Spencer was at around 3:30 or 4:00 A.M.
The State charged Spencer with one count of drive-by shooting in violation of RCW 9A.36.045(1)[1] and one count of witness tampering in violation of RCW 9A.72.120(1)(c).[2]

Leanne McMullen's Testimony
At trial, the State called Leanne McMullen. McMullen also considered herself Spencer's girlfriend and was the mother of his child. According to McMullen, Spencer borrowed her car the evening of October 16. McMullen was spending the night babysitting for a friend at the friend's home, and Spencer was to return the car to McMullen the next morning. Spencer returned to where McMullen was staying to pick her up at about 5:30 A.M.
*212 McMullen further testified that on October 28, Spencer asked her to come to his house. When she arrived, Spencer told her that police officers were expected to search his house and look for a gun because they thought he was involved in a drive-by shooting. Spencer encouraged McMullen to agree that he had returned her car to her at 2:00 or 3:00 A.M. on the morning of the shooting. She agreed to say that Spencer had returned it at 3:00 A.M.
McMullen also testified that later Spencer told her that he was involved in a "`walk-by, run-by'" in the early morning of October 17. III Report of Proceedings (RP) at 192. McMullen decided to talk to the police again. She met with Detective Lewis and told him that Spencer had returned at around 5:30 A.M. on October 17.
On cross-examination, Spencer's defense counsel questioned McMullen about whether Spencer pressured her to lie and whether McMullen's mother influenced her to speak with the police again.

Karen Schmidt's Testimony
Later in the trial, Spencer called Karen Schmidt to testify about statements that McMullen had made to her. The State objected, arguing that such statements would be hearsay and to admit them under any exception would require that Spencer first confront McMullen about those statements under ER 801(d).[3]
Spencer's counsel replied that he was seeking to elicit Schmidt's testimony not under ER 801(d), but under ER 803(a)(3)[4] as a statement of the declarant's state of mind and emotion. Spencer's counsel offered that McMullen told Schmidt that the police intimidated and coerced her into talking with them a second time. Schmidt would also testify that McMullen told her that Spencer was not guilty, that she was afraid the police and Child Protective Services (CPS) would take her child away, and that McMullen was angry about Spencer having a second girlfriend.
The State countered that such a rule interpretation would be too broad because it would allow Spencer to impeach McMullen's testimony without giving McMullen a chance to respond.
The trial court ruled that because Spencer did not ask McMullen about her alleged statements to Schmidt while McMullen was on the stand, Spencer could not later call Schmidt to testify about McMullen's mental conditionher state of mind, intent, and motive.
Spencer then argued that Schmidt's statements were admissible under ER 804(b)(3)[5] as statements against McMullen's penal interests because McMullen said she was afraid she would go to jail if she did not say what the police wanted. The trial court declined to admit the statements on this ground.
Finally, Spencer asked to recall McMullen in order to ask her about these statements to Schmidt. The trial court denied Spencer's request.

Accomplice Liability Instruction
At the close of trial, the court instructed the jury on the definition of accomplice liability. *213 The "to convict" instruction, however, did not instruct the jury that Spencer could be found guilty of drive-by shooting based on accomplice liability.
Furthermore, the jury instruction that defined accomplice liability was based on 11 WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 10.51 (2d ed. 1994) (WPIC) and, therefore, included the provision that an accomplice acts with "knowledge that [the action] will promote or facilitate the commission of a crime." Clerk's Papers at 29 (emphasis added).
Defense counsel objected to the instruction on the basis that the evidence did not support it. The trial court overruled the objection.
In its opening statement, the State mentioned: "In the early morning hours of October 17, 1999, the defendant or an accomplice fired a 9mm handgun, fired several rounds at the home of his girlfriend, Jessica Brayton." II RP at 84. In closing, the State argued that a person could commit a drive by shooting as an accomplice.[6] Later the State argued that
[t]here is an instruction, the "accomplice" instruction, and that tells you that a person is responsible for the acts of another if they're an accomplice, so when the "to convict" instruction tells you about the defendant, the "accomplice" instruction incorporates that person if there is another person involved as an accomplice, incorporates them into that.
V RP at 482.
The jury convicted Spencer as charged and he appeals.

ANALYSIS

Exclusion of Schmidt's Testimony
Spencer first contends that the trial court erred in not allowing Spencer to call Schmidt as a witness to testify about McMullen's bias against him.
We first note that a defendant has a constitutional right to impeach a prosecution witness with bias evidence. Davis v. Alaska, 415 U.S. 308, 316-18, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). It is reversible error to deny a defendant the right to establish the chief prosecution witness's bias by an independent witness. State v. Jones, 25 Wash. App. 746, 751, 610 P.2d 934 (1980) (citing State v. Beaton, 106 Wash. 423, 180 P. 146 (1919) and State v. Eaid, 55 Wash. 302, 104 P. 275 (1909)). Any error in excluding such evidence is presumed prejudicial but is subject to a harmless error analysis: reversal is required unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place. State v. Johnson, 90 Wash.App. 54, 69, 950 P.2d 981 (1998).
Spencer wanted to call Schmidt to impeach McMullen's credibility. The trial court ruled that this was improper because Schmidt's testimony was hearsay, and in order for it to meet the exception to the hearsay rule, in ER 801(d)(1), McMullen needed to have established a foundation for Schmidt's testimony by cross-examining McMullen on the statements she allegedly made to Schmidt. Because, during cross-examination, Spencer did not ask McMullen about statements she allegedly made to Schmidt, McMullen did not have an opportunity to refute the statements.
For the reasons set forth below, the trial court erred in excluding Schmidt's testimony. First, Schmidt's testimony would not have been hearsay because it was not being offered for the truth of the matter asserted. ER 801(c);[7]see also Betts v. Betts, 3 Wash. App. 53, 59, 473 P.2d 403 (statements offered to show mental state, rather than the truth of the assertions made, are not hearsay), review denied, 78 Wash.2d 994 (1970). Here, Spencer's offer of proof regarding Schmidt's testimony indicates that Schmidt would have testified about McMullen's state of mind:

*214 Karen Schmidt would testify that Leanne [McMullen] told her Leanne knows that Henry did not do this and she did that because she was scared for herself and for her child, that the police threatened her that CPS would be involved and they would take her to jail ... unless the police were told what they wanted to hear. She will also testify about how Leanne was angry about the second girlfriend situation.
IV RP at 271. Regardless of whether the police actually threatened McMullen with CPS taking her child away, Schmidt would have testified to McMullen's state of mind regarding her statement to the police. As such, Schmidt's testimony would not have been hearsay and should not have been excluded on this basis.
Second, a careful reading of the law indicates that no foundation is needed to impeach a witness's testimony with a prior statement as extrinsic evidence of bias. Prior case law conflated two separate concepts: impeachment by evidence of bias and impeachment by prior inconsistent statements. In Harmon, our Supreme Court held that regardless of whether testimony was offered "for the purpose of impeachment or for the purpose of showing bias or prejudice of the witness," the witness should be asked about the former statements. State v. Harmon, 21 Wash.2d 581, 590, 152 P.2d 314 (1944).
Yet the policy of requiring a witness to have the chance to refute or agree with a prior inconsistent statement only applies to evidence that is offered as inconsistent with the witness's testimony. A prior inconsistent statement is a comparison of something the witness said out of court with a statement the witness made on the stand. ER 613(b)[8] requires the witness have the opportunity either to admit the inconsistency and explain it (in which case the testimony of the prior statement is not admissible as evidence) or to deny it (in which case evidence of the prior inconsistent statement is admissible).
In contrast, a prior statement that shows the State's witness's bias toward the defendant is merely extrinsic evidence of bias. Because it is not being compared with a statement the witness has made on the stand, the witness has no right to be presented with the content of the testimony before it is offered.
This analysis is consistent with policy found in case law more recent than Harmon. In Wilder, we noted that when a prior inconsistent statement is used, usually "the witness should first be given an opportunity either to demonstrate his bias or to deny having uttered the prior inconsistent statement." State v. Wilder, 4 Wash.App. 850, 855, 486 P.2d 319, review denied, 79 Wash.2d 1008 (1971). But in Wilder, we held that there was no reason to "apply the Harmon limitation upon the right to pursue bias of a witness" when the party attempts to show bias through the witness's conduct. Wilder, 4 Wash.App. at 855, 486 P.2d 319.
We also held that under ER 613(b), when a statement is introduced as extrinsic evidence of bias, it is sufficient to give the declarant an opportunity to explain or deny the statement after introducing the evidence; no foundation is needed beforehand. See Johnson, 90 Wash.App. at 70, 950 P.2d 981. Recently, Division One similarly held that "extrinsic evidence of acts or conduct may be introduced to prove a witness's bias without first calling such acts or conduct to the witness's attention." State v. Huynh, 107 Wash. App. 68, 74, 26 P.3d 290 (2001) (citing Wilder, 4 Wash.App. at 855, 486 P.2d 319 and ER 613(a)).
Furthermore, the Wilder court recognized that "[i]t is fundamental that a defendant charged with the commission of a crime should be given great latitude in the cross-examination of prosecuting witnesses to show motive or credibility." Wilder, 4 Wash. App. at 854, 486 P.2d 319. This policy reflects the constitutional requirement that the defendant is able to impeach witness credibility. *215 The constitutional requirement serves as a broad backdrop, against which the rule requiring foundation is best viewed as an exception. See Davis, 415 U.S. 308, 316-18, 94 S.Ct. 1105, 39 L.Ed.2d 347. Therefore, when the policy of laying a foundation for prior inconsistent statements does not apply, as it does not here, the defendant should be afforded broad latitude in showing the bias of opposing witnesses.
Here, because Schmidt's testimony was not offered to contradict what McMullen said on the stand, it was not offered as an inconsistent statement. Schmidt's testimony of her conversation with McMullen was offered for the same reason a party would offer extrinsic evidence of biased conduct: to show that McMullen may have had motives and biases for making her second statement to the police that did not involve conveying the truth. Because McMullen's testimony was crucial to the State's case, and because the jury may have not convicted Spencer if Schmidt had testified about McMullen's possible biases and motives for testifying, the error was not harmless.
We also note that the trial court erred further when it did not allow Spencer the opportunity to recall McMullen to comment on any testimony of bias after its introduction. Johnson, 90 Wash.App. at 70, 950 P.2d 981.
We reverse and remand for a new trial.
We further address only those assignments of error that might arise on remand.

Accomplice Liability Instruction
Spencer also contends that the prosecutor improperly argued accomplice liability because the court did not instruct the jury that a person who is an accomplice in the commission of a crime is guilty of that crime. Spencer further asserts that the definitional instruction was wrong because it defined an accomplice as someone who acts with the knowledge that his actions will facilitate the commission of a crime instead of the crime.
We agree that the prosecutor made an improper argument. The trial court gave a definitional instruction regarding accomplice liability, but it did not instruct the jury that it could convict Spencer of the crime if it found that he was an accomplice. A trial court must instruct the jury on accomplice liability before a person can be convicted as an accomplice. State v. Davenport, 100 Wash.2d 757, 764-65, 675 P.2d 1213 (1984). Nevertheless, during closing argument, the prosecutor asserted that Spencer could be found guilty as an accomplice. In doing so, the prosecutor engaged in misconduct.
Finally, the trial court erred in giving an instruction (WPIC 10.51) because it relieved the State of the burden of proving that Spencer, as an accomplice, acted with knowledge that what he was doing would promote or facilitate the commission of the crime charged. State v. Cronin, 142 Wash.2d 568, 579, 14 P.3d 752 (2000) (WPIC 10.51 is an incorrect statement of the law).[9]

Linked Appeal
Spencer also filed an appeal from a posttrial decision that denied his motion for a new trial. The basis of his motion was that he had newly discovered evidence in the form of an affidavit from Leanne McMullen in which she qualified some of her trial testimony. The trial court denied the motion on the pleadings, ruling that Spencer had failed to satisfy the CrR 7.8(b)(2) requirements.
Because we are remanding for a new trial, Spencer's prayer for relief is moot and his linked appeal must be dismissed. See State v. Turner, 98 Wash.2d 731, 733, 658 P.2d 658 (1983) (a case is moot if the issues are purely academic and there is no effective relief that court can provide).
*216 Cause No. 26165-1-II is reversed and remanded and Cause No. 27555-4-II is dismissed.
ARMSTRONG, J., and HUNT, C.J., concur.
NOTES
[1] RCW 9A.36.045(1) states that "[a] person is guilty of drive-by shooting when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge."
[2] RCW 9A.72.120(1)(c) states in relevant part that "[a] person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding... to ... [w]ithhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency."
[3] ER 801(d)(1) states in relevant part that "[a] statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is ... inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]"
[4] ER 803(a)(3) states in relevant part that even when the declarant is available as a witness, a statement is not excluded by the hearsay rule when it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition[.]"
[5] ER 804(b)(3) states in relevant part, "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ... [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
[6] "A person commits the crime of drive-by shooting when the defendant or an accomplice...." V RP at 440.
[7] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c) (emphasis added).
[8] ER 613(b) states in relevant part that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."
[9] The State correctly concedes this error. And because we reverse and remand on other grounds, we do not address whether the error was harmless. See State v. Gentry, 125 Wash.2d 570, 616-17, 888 P.2d 1105 (purely academic discussions of moot issues are inappropriate), cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 79 (1995); State v. Jennings, 111 Wash. App. 54, 44 P.3d 1 (2002) (an element omitted from, or misstated in, a jury instruction, is harmless if that element is supported by uncontroverted evidence).