[No. 44951-0-II.   Division Two.   March 31, 2015.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM H. ELLISON, *Appellant*.

*Sarah McNeel Hrobsky* (of *Washington Appellate Project*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney,* and *Thomas C. Roberts, Deputy,* for respondent.

¶1 BJORGEN, A.C.J. — Following a bench trial, the trial court found William H. Ellison guilty of second degree rape and second degree child molestation based on conduct against AE,[1] the minor granddaughter of Ellison's former wife. The court imposed a mandatory life sentence without the possibility of early release, based on a finding that Ellison had previously been convicted of two crimes defined in RCW 9.94A.030 as "most serious" offenses under the Persistent Offender Accountability Act (POAA), RCW 9.94A-.570. Ellison appeals, arguing that the trial court denied him the right of allocution and that increasing his punishment based on the judicial finding, not expressly made beyond a reasonable doubt, that Ellison had two prior qualifying convictions violated his rights to due process of law and to equal protection of the laws under the federal constitution.

---

[1] Consistently with our court's General Order 2011-1, we refer to minor victims by their initials to protect their privacy. Gen. Order 2011-1 of Division II, *In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

¶2 Ellison also submits a statement of additional grounds for review (SAG) under RAP 10.10, claiming that the trial court violated his right to a speedy trial and that his attorney denied him the right to participate in his own defense, refused to present exculpatory evidence, and denied Ellison his right to a jury trial. Ellison further contends in his SAG that the trial judge and the prosecutor committed misconduct. We affirm Ellison's convictions and sentence.

## FACTS

¶3 In January 2011, AE accused Ellison of forcing her to have sexual intercourse on one occasion and fondling her breasts on several occasions. AE alleged that the sexual abuse occurred between September 2006 and July 2008, while she lived with her grandmother and legal guardian, Joan Ellison, who was married to William Ellison at the time.[2] Based on AE's accusations, the State filed charges against Ellison in April 2011. The State subsequently notified Ellison that second degree rape qualified as a "most serious offense" under RCW 9.94A.030(37) and that if he had previously been convicted on separate occasions of two other such offenses, he would be sentenced to a term of total confinement for life without the possibility of release under the POAA. 1 Verbatim Report of Proceedings at 8; Clerk's Papers at 6.

¶4 Ellison remained in custody from April 2011 throughout the proceedings. On October 9, 2012, the day trial was set to begin, the prosecutor requested a continuance, informing the court that she had developed a medical problem that required surgery and rendered her unable to proceed as scheduled. Against Ellison's wishes, defense counsel did not object. The trial court found good cause and granted the continuance.

---

[2] The couple divorced in July 2011. For clarity, we refer to Joan Ellison by her first name. We intend no disrespect.

¶5 In November 2012, against his attorney's wishes, Ellison filed a pro se motion to dismiss the charges against him. Ellison based the motion on, among other grounds, violation of the time-for-trial rule and his constitutional right to a speedy trial. After reviewing the scheduling orders in the case, the trial court denied the motion.

¶6 The parties completed voir dire on January 7, 2013. The next day, following an extensive colloquy, Ellison waived his right to a jury trial. The court began hearing testimony on January 9.

¶7 The State presented the testimony of Joan, AE, and David Duralde, MD, a child abuse expert. Ellison testified on his own behalf, and the defense called no other witnesses.

¶8 The trial court found Ellison guilty of one count of second degree rape and one count of child molestation and entered written findings of fact and conclusions of law. The State presented certified copies of the judgment and sentence evidencing Ellison's history of felony convictions, as well as an affidavit from a forensic technician stating that Ellison was the same person identified in those documents.

¶9 The court concluded that Ellison was a persistent offender based on the current convictions and its findings that Ellison had two robbery convictions from 1994 and 1997. Ellison did not object to these findings, and the record does not reveal what evidentiary standard the court applied in making them.

¶10 After hearing a statement from Joan and argument from counsel, the sentencing court invited Ellison to allocute. Ellison sang a short religious song and spoke about various topics not clearly related to the sentencing proceeding. After making extensive remarks, Ellison began to protest his innocence and accuse his trial attorney of lying to the court. At that point, the court cut Ellison off, explained that the matters he related were irrelevant to the issues at hand, and pronounced the sentence. Ellison asked for permission to finish his remarks, but the court declined.

784

¶11 As required by RCW 9.94A.570, the sentencing court imposed a term of total confinement for life without the possibility of release. Ellison timely appeals.

## ANALYSIS

¶12 Because it raises an issue of first impression in Washington, we begin by addressing in the published portion of this opinion Ellison's contention that the sentencing court denied him the right of allocution. In the unpublished portion, we turn to Ellison's constitutional challenges to the sentencing procedure and the claims raised in Ellison's SAG.

### THE RIGHT OF ALLOCUTION

¶13 Ellison claims that the sentencing court violated his right to meaningful allocution by interrupting his remarks and refusing to allow him to finish. Ellison contends that this error requires resentencing before a different judge.[3] We hold that the sentencing court did not violate Ellison's right of allocution.

¶14 The right of allocution is guaranteed by RCW 9.94A.500(1), which states in relevant part that "[t]he court shall . . . allow arguments from . . . the offender . . . as to the sentence to be imposed." Our Supreme Court has specified that "trial courts should scrupulously follow" this statutory mandate. *In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336-37, 6 P.3d 573 (2000). Offenders subject to a mandatory life sentence enjoy this right even though the sentencing court has no discretion to exercise. *State v. Snow*, 110 Wn. App. 667, 669-70, 41 P.3d 1233 (2002).

---

[3] The State invites us to decline to consider Ellison's allocution claim, asserting that he failed to timely object. Ellison, however, repeatedly protested the court's termination of his remarks, which sufficiently apprised the trial court of the claimed error. *State v. Moen*, 129 Wn.2d 535, 547, 919 P.2d 69 (1996); *see United States v. Feng Li*, 115 F.3d 125, 132 (2d Cir. 1997) (rejecting an identical waiver argument on the ground that the defendant's protestations adequately apprised the trial court of the issue).

¶15 Here, the sentencing court invited Ellison to speak, allowing him to make lengthy remarks before interrupting and pronouncing the sentence. Thus, the issue presented involves the extent to which a court may limit the exercise of the right to allocution.

■ ¶16 Our state Supreme Court has specified that allocution

> is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. It is the defendant's opportunity to plead for mercy and present any information in mitigation of sentence.

*State v. Canfield*, 154 Wn.2d 698, 701, 116 P.3d 391 (2005). It is not, however, intended to advance or dispute facts. *State v. Lord*, 117 Wn.2d 829, 897-98, 822 P.2d 177 (1991); *see State v. Curtis*, 126 Wn. App. 459, 463, 108 P.3d 1233 (2005).

■ ¶17 The sentencing court allowed Ellison to speak for some time, cutting him off only when he began using the opportunity to testify about the facts of the case and complain about the conduct of his trial attorney. Under *Canfield*, those were not legitimate purposes for allocution. Because the court let Ellison speak without interruption until it was clear he was using the allocution for improper purposes, we hold that the trial court did not abuse its discretion in cutting short Ellison's allocution.[4]

¶18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK and MELNICK, JJ., concur.

Review denied at 183 Wn.2d 1023 (2015).

---

[4] This conclusion is consistent with *United States v. Muniz*, 1 F.3d 1018, 1024-25 (10th Cir. 1993), which held that a sentencing court did not violate the right to allocute by cutting the defendant off after he began rearguing the case and complaining that his trial rights had been violated.