FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8:30

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45587-1-II |
| Respondent, | |
| v. | |
| ROBERT BRUCE McKAY-ERSKINE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Robert McKay-Erskine (McKay) appeals his convictions and sentence for child molestation and child rape resulting from the sexual abuse of his stepdaughter, AB. We hold that (1) the trial court did not err by admitting McKay's past statements regarding sexual conduct with young children because they provided evidence of his motive; (2) even if the trial court erred in excluding evidence that McKay's ex-wife made a statement to his girlfriend that could be interpreted as a threat against McKay, the error was harmless; and (3) several issues McKay raised in his statement of additional grounds (SAG) have no merit. Accordingly, we affirm McKay's convictions.

However, we hold that the trial court erred in sentencing by imposing certain community custody conditions. We remand to the trial court to strike the community custody conditions requiring substance abuse and mental health evaluations unless it makes necessary factual findings to support those conditions and to reevaluate the community custody condition prohibiting contact with vulnerable individuals.

## FACTS

*Background*

In the mid-1990s, McKay and Pyxey Erskine-McKay (Erskine) were members of a group of itinerant youths known as the Ave Rats, who congregated on and around University Way in Seattle's University District. Over the following two decades, many members of the Ave Rats moved away, but they remained a fairly close-knit group and often lived communally. The Ave Rats also engaged in communal sexual relationships, and McKay and Erskine each had several children of varying parentage. AB was Erskine's child with a father other than McKay.

Around 2009, McKay and Erskine entered into a committed relationship and began to cohabitate and raise their children together. At the time, AB was three or four years old. In 2011, McKay and Erskine married and moved with their children into a friend's house in Puyallup and later into a house in Tacoma. McKay took on a parenting and caretaking role for his and Erskine's children, including AB.

In early 2012, Camber Edwards, a friend of both McKay and Erskine, moved in with them. In May 2012, McKay and Edwards began a sexual relationship. Hostility arose when Erskine found out about the affair, and McKay and Edwards soon left the house.

*Sexual Abuse of AB*

Later in 2012, AB told two family friends living with them in Tacoma that McKay had abused her. The friends told Erskine, who asked them to take AB to school so she could report what happened. AB reported the abuse to the school counselor, and the next day to a Child Protective Services (CPS) social worker. CPS reported the abuse to the police, and AB subsequently repeated her story to an investigator and a medical examiner.

2

45587-1-II

According to AB's testimony, McKay began to sexually abuse her while the family was living in Puyallup and continued during their time in Tacoma. McKay forced AB to engage in oral and vaginal intercourse multiple times while other members of the family were away. AB was six or seven years old at the time.

The State charged McKay with two counts of first degree child molestation and three counts of first degree child rape. The State also alleged aggravating circumstances for all five counts due to McKay's alleged abuse of his position of trust as her stepfather and caretaker.

*McKay's Statements Regarding Sex and Children*

The State moved before trial to introduce statements McKay had made to friends several years earlier indicating a sexual interest in young children and a belief that sexual relationships between a father and a young daughter were appropriate. The trial court granted the State's motion and ruled that it would allow testimony on the statements. To support the ruling, the trial court specifically found that (1) by a preponderance of the evidence, McKay had made the statements at issue; (2) the statements were relevant to show McKay's motive and intent in committing the crimes; and (3) the probative value of the statements outweighed their prejudicial potential.

At trial, one friend testified that in 2005 McKay said "he believed that the thought of putting his penis in a child's mouth without any teeth sounded enticing." Report of Proceedings (RP) (Oct. 14, 2013) at 9. The friend also testified that McKay "told me that he enjoyed the feeling of a child's mouth on his penis." RP (Oct. 14, 2013) at 14-15. In addition, that friend testified that McKay told her during the same conversation, and at various other times, that "[a] girl's first sexual experience should be with her father because no one can love them as much as

3

their father." RP (Oct. 14, 2013) at 10. Another friend also testified that McKay had made similar statements to her that a girl should have her first sexual experience with her father.

*Erskine's Statement to Edwards*

At trial, McKay's attorney stated that he intended to ask Edwards, McKay's girlfriend, about a statement Erskine made to Edwards at some point after the fall of 2012. Edwards apparently was prepared to testify that Erskine had said something like "once I am done with [McKay], I am going to come after you." RP (Oct. 14, 2013) at 44. The State moved to exclude any such testimony on hearsay grounds. McKay argued that the evidence was admissible as evidence of Erskine's mental state at the time, but the trial court ruled that the evidence was inadmissible hearsay.

*McKay's Convictions and Sentence*

The jury found McKay guilty of each charged count and found that he had abused his position of trust with AB to commit those crimes. The trial court sentenced McKay to 318 months to life in prison and imposed community custody for the remainder of his life should he be released from confinement. The trial court imposed a number of community custody conditions. One of these conditions instructs McKay, "[d]o not have any contact with physically or mentally vulnerable individuals." Clerk's Papers (CP) at 123. Another condition requires him to "[o]btain a Substance Abuse Evaluation, a Mental Health Evaluation, and a psychosexual evaluation, and comply with any/all treatment recommendations." CP at 124.

McKay appeals his convictions and sentence.

4

## ANALYSIS

### A.     ADMISSIBILITY OF MCKAY'S STATEMENTS

McKay argues that his statements that sexual contact with young children sounded enticing and that daughters should engage in their first sexual encounters with their fathers were inadmissible under ER 404(b) because they amounted to character evidence relevant only to show a propensity to sexualize children. We disagree and hold that the evidence was relevant to show McKay's motive in committing the crimes against AB.

### 1.     Legal Principles

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). We review the trial court's interpretation of ER 404(b) de novo as a matter of law. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). If the trial court interprets the rule correctly, we review the decision to admit evidence under ER 404(b) for abuse of discretion. *Id.* A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Hassan*, 184 Wn. App. 140, 151, 336 P.3d 99 (2014).

Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the

probative value of the evidence against its prejudicial effect under ER 403.[1] *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

Here, the trial court properly interpreted ER 404(b) as allowing the admission of evidence regarding McKay's prior statements to show intent and motive. The trial court also analyzed the evidence and made the necessary findings on the record to support the admission of McKay's statements under ER 404(b). The question here is whether the trial court abused its discretion in admitting the statements to show intent and motive.

2. Applicability of ER 404(b) to Verbal Statements

Initially, the State argues that ER 404(b) applies only to a defendant's acts, and not to verbal statements or other expressions. We disagree because statements fall within the provisions of ER 404(b).

As the State points out, the language of ER 404(b) limits its application to "evidence of other crimes, wrongs, or acts." However, the rule "encompasses not only prior bad acts and unpopular behavior but *any* evidence offered to 'show the character of a person to prove the person acted in conformity' with that character at the time of a crime." *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002)).

We previously have applied ER 404(b) to verbal statements. *See State v. Venegas*, 155 Wn. App. 507, 525-26, 228 P.3d 813 (2010). And our Supreme Court has subjected expressive

---

[1] ER 404(b) must be read in conjunction with ER 403, which requires the trial to court to exercise its discretion in evaluating whether relevant evidence is unfairly prejudicial. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014). However, McKay does not argue that this evidence was inadmissible under ER 403. Therefore, we do not address this issue.

acts to ER 404(b) analysis as well. *Foxhoven*, 161 Wn.2d at 175 (analyzing the admissibility of "tag" graffiti); *State v. Coe*, 101 Wn.2d 772, 776, 684 P.2d 668 (1984) (analyzing the admissibility of evidence that, among other things, the defendant "used certain vulgar terms" during sex). Because the State has not identified any compelling reason to depart from these cases, we hold that ER 404(b) applies to McKay's statements.

3. Evidence of Motive

The trial court ruled that McKay's statements "show motive and intent due to the similarity [to the charged crimes], and as such, they are relevant to this case." RP (Sept. 26, 2013) at 35. We hold that the trial court did not abuse its discretion in admitting McKay's statements to show motive.

Under ER 404(b), prior act evidence can be admissible to prove motive. *See, e.g., State v. Yarbrough*, 151 Wn. App. 66, 83-84, 210 P.3d 1029 (2009) (holding that gang affiliation is admissible under ER 404(b) to show motive for the murder of a rival gang member). Motive is an "impulse, desire, or any other moving power which causes an individual to act." *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). Evidence of motive is admissible even when it is a not an element of the charged crime. *Yarbrough*, 151 Wn. App. at 83.

Here, the trial court did not have to attempt to infer motive from prior acts. Instead, McKay expressly stated why he might be motivated to molest and rape AB: because he thought that receiving oral sex from a young child was enticing and because he thought a daughter's first sexual encounter should be with her father. As a result, the evidence was not admitted to show that McKay acted in conformity with some propensity to have sex with children or his daughters

7

as McKay argues. It was admitted to show the impulse, desire, or moving power that caused him to act. *Powell*, 126 Wn.2d at 259.

Because McKay's statements were relevant to establish his motive in molesting and raping AB, we hold that the trial court did not abuse its discretion by admitting them.

B.   ADMISSIBILITY OF ERSKINE'S STATEMENT

McKay argues that the trial court violated his constitutional right of confrontation by precluding him from impeaching Erskine with evidence of a statement she made to Edwards, which he interpreted as a threat to set him up. McKay claims the statement was relevant to show that Erskine was biased against him. Even assuming without deciding that the trial court erred in excluding evidence of Erskine's statement, we hold that any such violation was harmless error.

Under the Sixth Amendment's confrontation clause, a defendant has a right to confront the witnesses against him through cross-examination. *Fisher*, 165 Wn.2d at 752. This right of confrontation includes a right to call a witness to impeach a prosecution witness by showing bias. *State v. Spencer*, 111 Wn. App. 401, 408-11, 45 P.3d 209 (2002). However, any error in excluding such evidence is subject to a harmless error analysis. *Id.* at 408. "[R]eversal is required unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place." *Id.*

Here, evidence of Erskine's statement would not have altered the reasoning of any rational juror. The evidence was repetitive, as Erskine's probable bias was clear from other evidence before the jury. The jury could strongly infer bias from other portions of Erskine's testimony, and the State readily admitted during closing argument that Erskine had an "ax to grind" with McKay. RP (Oct. 15, 2013) at 729.

8

Further, Erskine was not a crucial prosecution witness. She did not testify about McKay's abuse of AB or about any statements AB made about the abuse. She testified only to background facts that provided context and corroborated the testimony of other witnesses. Because Erskine did not provide any evidence crucial to McKay's conviction, there is no reason to believe that McKay would not have been convicted if evidence of Erskine's alleged threat had been admitted.

Because Erskine's potential for bias was evident and admitted, and because Erskine was not a crucial witness, we hold that any error in excluding evidence of Erskine's statement to Edwards could not have affected a rational jury's verdict and therefore was harmless.[2]

C.   COMMUNITY CUSTODY CONDITIONS

McKay argues that two of the community custody conditions imposed on him as part of his sentence were unauthorized under the circumstances of his case. First, he challenges a condition requiring evaluations for substance abuse and mental health. Second, he challenges a condition prohibiting contact with physically or mentally vulnerable individuals. We hold that the trial court's findings did not sufficiently support the condition requiring substance abuse and mental health evaluations and that on remand the trial court also should reevaluate the community custody condition prohibiting contact with vulnerable individuals.

---

[2] McKay also argues that the cumulative impact of the errors he alleges denied him a fair trial. Cumulative error may warrant reversal, even if errors are individually harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). However, because we hold that the trial court did not err in admitting McKay's statement, the only possible error was excluding Erskine's statement. And that error was harmless. Therefore, we reject this argument.

9

1.  Legal Principles

In general, the Sentencing Reform Act (SRA), ch. 9.94A RCW, authorizes imposition of prohibitions and affirmative conditions as part of any sentence if they are related to the crimes for which the defendant has been convicted. RCW 9.94A.505(8). Other provisions of the SRA govern the circumstances under which particular conditions may be imposed.

We review a sentencing court's imposition of community custody conditions for an abuse of discretion. *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). A sentencing court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds, and imposition of a condition without authorization is manifestly unreasonable. *Id*.

2.  Substance Abuse and Mental Health Evaluations

McKay's sentence included a community custody condition imposing a requirement that he "[o]btain a Substance Abuse Evaluation, a Mental Health Evaluation, and a psychosexual evaluation, and comply with any/all treatment recommendations." CP at 124. McKay argues that the trial court imposed without authorization the portion of this condition requiring substance abuse and mental health evaluations. We agree that imposition of these conditions was not authorized under the circumstances.

a.  Substance Abuse Evaluation

McKay argues that the trial court was not authorized to impose a substance abuse evaluation condition because his crimes were unrelated to substance abuse. We agree.

RCW 9.94A.703(3)(d) authorizes a court to order a defendant as part of his sentence to participate in crime-related treatment or counseling services or rehabilitative programs "related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the

10

community." In *State v. Jones*, we held that substance abuse treatment reasonably relates to the offender's risk of reoffending and to the safety of the community only if the evidence shows that substance abuse contributed to the offense. 118 Wn. App. 199, 208, 76 P.3d 258 (2003).

Here, there is no evidence that substance abuse played a role in McKay's commission of the crimes against AB. The record shows that McKay had issues with substance abuse. But the only evidence in the record indicating that this substance abuse was relevant in this case was testimony that a friend thought McKay's statements regarding sex and children were the product of his drug use, rather than reflections of his actual beliefs. No evidence directly or indirectly linked McKay's drug use to his commission of the crimes against AB.

Because the evidence did not show that McKay's substance abuse contributed to his offenses, it was manifestly unreasonable for the trial court to impose a community custody condition requiring a substance abuse evaluation. Therefore, we remand to the trial court with instructions to strike that condition unless it finds that McKay's substance abuse contributed to the abuse of AB.

b.    Mental Health Evaluation

McKay argues that the trial court was not authorized to impose a mental health evaluation condition because his crimes were unrelated to any mental illness. The State concedes that the trial court was unauthorized to impose this condition because it made no finding that McKay suffered from a mental illness related to the crimes against AB. We accept the State's concession and hold that the mental health evaluation condition was improper.

Like substance abuse counseling and treatment, mental health counseling and treatment may be required as a sentencing condition under RCW 9.94A.703(3)(c) and (d) as long as the

11

counseling and treatment is "crime-related" or "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." However, RCW 9.94B.080 further requires that mental health evaluation and treatment may only be imposed

> if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense. An order requiring mental status evaluation or treatment must be based on a presentence report and, if applicable, mental status evaluations that have been filed with the court to determine the offender's competency or eligibility for a defense of insanity.[3]

We held in *Jones* that mental health treatment and counseling "reasonably relates" to the offender's risk of reoffending and to the safety of the community "only if the court obtains a presentence report or mental status evaluation and finds that the offender was a mentally ill person whose condition influenced the offense." 118 Wn. App. at 210.

Here, a presentence report submitted to the trial court indicated that McKay suffered from some mental health issues and recommended imposing a mental health evaluation at sentencing. But the trial court made no finding that McKay was mentally ill or that any mental illness influenced his offenses. Therefore, under *Jones*, the trial court was not authorized to impose mental health counseling or treatment.

We hold that the trial court abused its discretion by imposing the mental health evaluation condition without finding that McKay was a mentally ill person whose illness influenced the

---

[3] The title of chapter 9.94B RCW indicates that the chapter applies only to crimes committed before July 1, 2000. Similarly, RCW 9.94B.010(1) provides that "[t]his chapter codifies sentencing provisions that may be applicable to sentences for crimes committed prior to July 1, 2000." However, a 2008 amendment to chapters 9.94A and 9.94B RCW included an express statement that the provision currently codified at RCW 9.94B.080 applies to crimes committed after August 1, 2009. *See* LAWS of 2008, ch. 231, § 55. Because McKay committed his crimes in 2012, RCW 9.94B.080 applies to his sentencing.

offense. Therefore, we remand for the trial court to strike the condition unless it finds, based on evidence presented at sentencing, that McKay was a mentally ill person whose condition influenced the abuse of AB.

    3.    No Contact with Physically or Mentally Vulnerable Individuals

McKay's sentence included a condition that he "not have any contact with physically or mentally vulnerable individuals." CP at 123. McKay argues that this condition was not related to the crimes for which he was convicted because AB was not physically or mentally vulnerable, and therefore that imposition of the condition was unauthorized. We decline to address this argument because of our decision in *State v. Johnson*, 180 Wn. App. 318, 327 P.3d 704 (2014), which we issued after briefing in this case.

In *Johnson*, we held that a community custody condition prohibiting "any contact with physically or mentally vulnerable individuals" was unconstitutionally vague. *Id.* at 326-329. McKay did not raise this issue on appeal. However, we remand for the trial court to reevaluate the "vulnerable individuals" community custody condition in light of *Johnson*.

D.    SAG Assertions

In his SAG, McKay makes seven further claims of error. Two of the issues he raises do not warrant review. None of his other assertions have merit.

    1.    Issues Not Warranting Review

McKay challenges the use of his past statements on grounds that they amounted to character evidence offered to show a propensity to commit sex crimes against children. But his attorney ably presented this issue in the main appeal, and it is addressed in section A above. McKay presents no grounds for further review of this issue.

13

McKay also asserts that several admitted exhibits contained inadmissible hearsay, and that their admission violated his confrontation right. However, these exhibits are not part of the record on appeal. We cannot consider matters outside the record on a direct appeal. *State v. Ellison*, ___ Wn. App. ___, 346 P.3d 853, 856 (2015), *petition for review filed*, No. 91612-8 (Wash. Apr. 30, 2015). If McKay wishes to raise this issue, the appropriate avenue would be a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

2. Other Issues

a. Admissibility of Child Hearsay

McKay asserts that the trial court violated his confrontation right by allowing witnesses to testify about AB's out-of-court statements without adequately analyzing the reliability factors necessary to admit child hearsay. We disagree.

Hearsay statements of a child under the age of 10 are admissible in a criminal case when the statements describe sexual or physical abuse of the child; the court finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and the child testifies at the proceedings. RCW 9A.44.120; *State v. Kennealy*, 151 Wn. App. 861, 880, 214 P.3d 200 (2009). We review a trial court's decision to admit child hearsay statements for an abuse of discretion. *Kennealy*, 151 Wn. App. at 879.

In determining the reliability of child hearsay statements, the trial court considers the *Ryan*[4] reliability factors: (1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statements, (4) the spontaneity of

---

[4] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

14

the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement. *Kennealy*, 151 Wn. App. at 880. No single *Ryan* factor is decisive, but the factors must be "substantially met" to indicate sufficient reliability. *Id.* at 881.

The trial court found that the *Ryan* factors were substantially met under the circumstances of this case. McKay challenges this determination, arguing that each factor should have weighed against this finding.

Regarding factors one and two, McKay argues that AB had a motive to lie and a general character indicating that her statements were unreliable. He bases this argument on the possibility that Erskine coached AB or otherwise influenced her to concoct false stories of the sexual abuse. He points out that Erskine had a motive to influence AB in this way. However, Erskine's motives are not relevant to an analysis of AB's motives or character, and therefore they do not bear on these reliability factors. The testimony at the hearing established that AB was actually quite trustworthy and did not dislike or fear the defendant prior to the abuse. In fact, McKay himself seems to indicate that AB had no ill will toward him.

Regarding factor three, McKay notes that while AB made the same general statements to more than one person, some of the details were inconsistent. But the fundamental details of the oral and vaginal intercourse and digital molestation were consistent. When several statements describe a "substantially similar account of the events to multiple people sequentially, [it]

15

supports the trial court's ruling on the statements' reliability and trustworthiness." *Kennealy*, 151 Wn. App. at 883. Because AB's statements, as recounted at the hearing, established a substantially similar account of the events, this factor weighs toward reliability.

Regarding factor four, McKay asserts that AB's statements were not spontaneous. He correctly notes that AB's statements were made in response to questions. But "for purposes of determining the reliability of a statement made by a child victim of sexual abuse, any statements made that are not the result of leading or suggestive questions are spontaneous" for purposes of assessing their reliability. *In re Dependency of S.S.*, 61 Wn. App. 488, 497, 814 P.2d 204 (1991). The questions to which AB responded were open-ended, and her responsive statements were therefore "spontaneous."

Regarding factor five, McKay seems to suggest that the timing of AB's statements and AB's relationship with the people she told about the abuse indicate a lack of reliability. But he argues only that one of the hearsay witnesses had mental health problems and a history of sexual abuse, and that the witness may have prompted AB's statements. This argument does not address AB's relationship with that witness or the importance of the timing of her statements, and therefore does not address the impact of that relationship on the reliability of AB's statements. *See Kennealy*, 151 Wn. App. at 884.

Regarding factor seven, McKay argues that AB's lack of knowledge about the abuse could not be drawn out on cross-examination, and that this weighed against a finding of reliability. McKay seems to suggest that cross-examination about the abuse would have shown AB's lack of knowledge had he been allowed to cross-examine her on that topic. The trial court limited the scope of cross-examination at the hearing, excluding questions about the abuse to

16

protect AB from unnecessary trauma. But the trial court allowed cross-examination as to AB's memory and general lack of knowledge. McKay chose not to cross-examine her on those topics, but it cannot be said that he was unable to show her lack of knowledge via cross-examination.

In summary, none of McKay's arguments establish that the trial court's decision to admit AB's hearsay statements was unreasonable under the circumstances. Because he fails to show that the trial court acted unreasonably in finding that the *Ryan* factors showed sufficient reliability in this case, the trial court did not abuse its discretion by allowing the child hearsay testimony.

b. Admissibility of Hearsay

McKay challenges the admission of testimony by social workers and investigators who interviewed AB recalling AB's statements to them about the abuse. He appears to assert that the testimony violated both his constitutional right of confrontation and the rules of evidence governing admission of hearsay statements. We reject both arguments.

McKay asserts that the admission of the child hearsay evidence violated his confrontation right because AB's statements to social workers and investigators were testimonial. However, even if the statements were testimonial, a trial court violates a criminal defendant's confrontation right by admitting hearsay evidence only if the defendant is unable to cross-examine the hearsay declarant. *State v. Price*, 158 Wn.2d 630, 640, 146 P.3d 1183 (2006). Because AB testified at trial and was cross-examined by McKay, the trial court did not violate McKay's right to confront her.

McKay also seems to assert that the hearsay statements should not have been admissible as statements related to medical treatment. But there is no indication that the trial court admitted

17

the testimony pursuant to that hearsay exception. The testimony was instead admissible under RCW 9A.44.120 and application of the *Ryan* child hearsay factors. Moreover, McKay seems to challenge only testimony offered at the child hearsay hearing, which is not subject to the rules of evidence. *See* ER 1101(c)(3). Therefore, we hold that McKay's arguments relating to hearsay evidence lack merit.

### c. Prosecutorial Misconduct

McKay asserts that the prosecutor committed prejudicial misconduct during closing argument. However, McKay did not object to any of the argument he now characterizes as improper. We hold that he waived this issue by failing to object.

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted therefrom by examining that conduct in the full trial context, including the evidence presented, the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).

When the defendant fails to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.*

McKay argues that the prosecutor improperly resorted to denigrating remarks about Erskine and the Ave Rats as a group. The prosecutor implied that Erskine could not have coached AB to fabricate her accusations because Erskine was not intelligent enough to concoct such a scheme. The prosecutor also implied that the other members of the Ave Rats whose testimony corroborated AB's story were too unintelligent and unmotivated to go along with any such scheme. While the trial testimony arguably supported these inferences, the prosecutor likely went too far in so commenting on Erskine and the other witnesses. But the remarks appear to have been intended to support the credibility of the witnesses they denigrated. While different phrasing would have been more appropriate and could have better illustrated the prosecutor's point, there is no indication that the prosecutor's statements were flagrant or ill-intentioned or that an instruction could not have cured any prejudice.

McKay also argues that the prosecutor misrepresented the evidence by referring to facts not substantiated by the evidence presented at trial. During closing argument, the prosecutor repeatedly stated that AB urinated on herself twice when discussing her abuse with her school counselor. The school counselor testified that AB "wet her pants in my office on two occasions, but *I can't recall if that was during the disclosure or afterwards or before*." RP (Oct. 9, 2013) at 372 (emphasis added). While the prosecutor arguably misrepresented the evidence on this issue, a curative instruction could have easily remedied any resulting prejudice had McKay objected. But McKay did not object, and nothing in the record shows that the prosecutor's description of AB's incontinence was flagrant and ill-intentioned misconduct warranting reversal.

Finally, McKay argues that the prosecutor inappropriately appealed to the jury's sympathy for AB. But the prosecutor's comments appear to explain AB's behavior by emotionally

contextualizing her discussions with investigators and testimony at trial. Because AB's credibility was key in this case, and McKay's primary defense theory was that she was coached to give false testimony, the prosecutor did not commit misconduct by highlighting that emotional context and the difficulty AB faced in accusing McKay and testifying. And any prejudice due to sympathy was effectively cured by the trial court's instruction to the jurors not to allow their emotions to govern their deliberations.

Because McKay does not show flagrant, ill-intentioned misconduct resulting in incurable prejudice, we hold that he has waived his claims of prosecutorial misconduct.

### d. Same Criminal Conduct

McKay asserts that the trial court erred by failing to count all five of his offenses as the same criminal conduct for purposes of calculating his offender score at sentencing. We disagree.

For purposes of calculating an offender score, offenses which constitute the same criminal conduct are counted as one offense. RCW 9.94A.525(5)(a)(i). " 'Same criminal conduct . . .' means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). If any element of the same criminal conduct analysis is missing, a trial court must count the offenses separately when calculating the offender score. *State v. Walker*, 143 Wn. App. 880, 890, 181 P.3d 31 (2008).

Here, McKay committed multiple acts against AB on different occasions and in different locations. Therefore, the acts clearly were not committed at the same time and place, and the trial court correctly considered McKay's five offenses to be distinct criminal conduct for

20

purposes of calculating the offender score. We therefore reject McKay's same criminal conduct argument.

e. Cumulative Error

McKay asserts that the aggregate impact of these cumulative errors denied him a fair trial. However, because the trial court did not commit the errors McKay asserts, there was no cumulative error.

We affirm McKay's convictions. But we remand to the trial court to strike the community custody conditions requiring substance abuse and mental health evaluations unless it makes necessary factual findings to support those conditions, and to reevaluate the community custody condition prohibiting contact with vulnerable individuals.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.