# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| Respondent, | ) No. 74036-9-I |
| | ) |
| v. | ) DIVISION ONE |
| | ) |
| CHRISTOPHER LEWIS LOCKEN, | ) UNPUBLISHED OPINION |
| | ) |
| Appellant. | ) FILED: April 17, 2017 |
| | ) |

APPELWICK, J. — Locken seeks reversal of his conviction because the trial court excluded as hearsay threatening text messages sent to him by the victim. Locken contends that the messages should not have been excluded because they were not offered for the truth of the matter asserted. The exclusion of the evidence was error, but it was harmless. We affirm the conviction, but remand for the trial court to conduct an inquiry into Locken's ability to pay discretionary legal financial obligations.

## FACTS

The State charged Christopher Locken with hit and run injury and assault in the second degree after he allegedly struck David Solis with his vehicle while Solis was standing on the side of the road. Locken and Solis had known each other for many years. Their relationship had soured in the months leading up to the incident. The incident occurred after Locken had been sending Solis

malicious messages, and Solis responded in kind. The testimony of Solis and his wife, Megan McAdams, was essential to establishing Solis was actually struck or was placed in fear of bodily injury.

Locken sought to introduce threatening text messages[1] sent from Solis to Locken to show that the threats exchanged between the parties were not "a one-sided thing." The trial judge excluded the messages sent from Solis to Locken as hearsay. But, it held that any messages sent from Locken to Solis were not hearsay, because they qualified as admissions of a party opponent.

The jury found Locken guilty of assault in the second degree, but not guilty of hit and run. Locken appeals.

## DISCUSSION

Locken raises two issues. First, he contends that the trial court erred in excluding evidence of threatening messages that Solis had sent Locken. Second, he argues that the trial court erred by not inquiring into his ability to pay discretionary legal financial obligations.

I.  Exclusion of messages from the victim

Determining whether evidence is admissible is within the discretion of the trial court and will be reversed only upon a showing of manifest abuse of discretion. State v. Bourgeois, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable or

---

[1] Because they were excluded, the messages themselves do not appear in the record. Rather, in Locken's offer of proof, he asserted that the messages were threatening. The State does not dispute this.

based on untenable grounds. <u>State v. Magers</u>, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

The trial court excluded the text messages as hearsay. Whether a statement is hearsay depends on the purpose for which the statement is offered. <u>State v. Crowder</u>, 103 Wn. App. 20, 26, 11 P.3d 828 (2000). Out-of-court statements offered in evidence to prove the truth of the matter asserted are hearsay and generally inadmissible. ER 801(c); ER 802. Statements not offered to prove the matter asserted, but rather as a basis for inferring something else, are not hearsay. <u>Crowder</u>, 103 Wn. App. at 26. And, threats are typically not offered to prove their truth, but merely to show that they were made and the effect they had on the listener. <u>See, e.g.</u>, <u>Tompkins v. Cyr</u>, 202 F.3d 770, 779 n.3 (5th Cir. 2000) ("Neither the testimony as to the threats, the recordings, the transcripts, nor the letters constituted hearsay. The threats here were not, and were not alleged to be, factual statements, the truth of which was in question. Rather, the threats were verbal acts.").

Here, Locken sought to introduce the threatening text messages to show that Solis, who was a key witness for the State, had threatened Locken.[2] Locken sought to show that Solis played a part in instigating the confrontation between Locken and Solis, and that he might be a biased witness against Locken. The statements were not offered for their truth. Rather, Locken sought to introduce

[2] The State contends that Locken's evidentiary argument was waived because no formal objection was placed on the record. But, while defense counsel may not have used the term "objection," the record clearly shows that Locken made substantial arguments as to why the trial court should admit the messages as evidence. We therefore consider the argument.

the threats into evidence to prove that the threats were not "one sided," and that Solis partially instigated the confrontation.

The trial court abused its discretion in excluding the threatening messages as hearsay.

Locken contends that the trial court's erroneous exclusion of the messages requires reversal because it violated his right to explore Solis's potential bias. In response, the State contends that any error was harmless.

A defendant has a constitutional right to impeach a prosecution witness with bias evidence. State v. Spencer, 111 Wn. App. 401, 408, 45 P.3d 209 (2002). Any error in excluding such evidence is presumed prejudicial. Id. But, such errors are subject to harmless error analysis. Id. Reversal is required unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place. Id. However, the exclusion of cumulative evidence is harmless. See State v. Flores, 164 Wn.2d 1, 19, 186 P.3d 1038 (2008).

The threatening messages at issue tended to show Solis's disdain for Locken and threats to Locken. The trial court noted to defense counsel that "of course, you can ask him those questions" about the threats. But, denied the motion to admit the text messages into evidence.

Locken contends that the evidentiary error rendered him unable to explain the background to the relationship between Locken and Solis. We disagree. The admitted evidence made it abundantly clear that Solis and Locken disliked one another. The jury heard evidence that Locken had had previously been in a

4

romantic relationship with Solis's wife. Solis testified that he had responded to Locken's threats with his "own kind of crap-talking." Solis testified that, on the day of the incident, he had dared Locken to come meet him at his location. And, Locken testified that the threats he made were in response to Solis' threats, and that Solis "had been trying to get me to fight him for months."

The testimony from Solis demonstrated a protracted period of antagonistic exchanges right up to the day he dared Locken to meet him. This demonstrated the bias Locken sought to prove. The messages would have added nothing.

We hold that excluding the messages sent by Solis was harmless error.

## II. LFOs

Locken argues that the trial court erred by not inquiring into his ability to pay discretionary legal financial obligations (LFOs), as required by State v. Blazina, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). The State concedes the trial court failed to inquire into Locken's ability to pay LFOs. We therefore reverse the imposition of discretionary LFOs, and remand to the trial court for an inquiry into Locken's ability to pay.

We affirm Locken's conviction. But, we remand for resentencing with respect to discretionary legal financial obligations.

Appelwick, J.

WE CONCUR:

Trickey, A.C.J.

5