# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52054-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JUAN GABRIEL FREGOSO URIBE, | |
| Appellant. | |

MAXA, C.J. – Juan Fregoso Uribe appeals his convictions of first degree child rape, three counts of first degree child molestation, and indecent liberties with forcible compulsion. The victim of all these crimes was his young niece. Fregoso Uribe also appeals a community custody condition precluding contact with his children and certain legal financial obligations (LFOs).

We hold that (1) the trial court did not misadvise Fregoso Uribe regarding his right to testify at trial, and (2) the trial court did not err in prohibiting cross-examination of the victim's mother and grandmother regarding bias because the alleged evidence of bias was irrelevant. However, we hold that the trial court erred in imposing the sentencing condition that prohibited Fregoso Uribe's contact with his children without considering on the record the effect of the condition on his constitutional right to parent. And on remand the trial court must consider the imposition of LFOs under the current law.

Accordingly, we affirm Fregoso Uribe's convictions, but we strike the sentencing condition prohibiting Fregoso Uribe's contact with his children and remand for the trial court to reconsider that condition and to consider the imposition of LFOs under the current law.

FACTS

*Background*

Fregoso Uribe lived with his wife Patricia Olvera[1] and their four young children. AOS is the daughter of Patricia's brother and her brother's wife Eugenia Olvera Gomez. In addition to being AOS's aunt and uncle, Fregoso Uribe and Patricia also were AOS's godparents. They frequently provided child care in their home for AOS while her parents were working, from the time AOS was about four years old. After AOS's younger brother was born, he also went to daycare at Patricia and Fregoso Uribe's house.

In February 2017, near the time of her eighth birthday, AOS told her grandmother Ramona Olvera that Fregoso Uribe touched her vagina, put her hand on his penis, and penetrated her vaginally and anally. Ramona later had a conversation with Mauricio, Eugenia, and AOS in which AOS repeated for her parents what she initially had told Ramona.

The State charged Fregoso Uribe with first degree rape of a child, three counts of first degree child molestation, and indecent liberties by forcible compulsion.

*Impeachment on Bias*

Fregoso Uribe believed that his sister-in-law Eugenia and his mother-in-law Ramona, AOS's mother and grandmother, were unhappy with him and had convinced AOS to fabricate the accusations against him. Fregoso Uribe thought that Eugenia was angry with him because

---

[1] To distinguish the members of Fregoso Uribe's wife's family from each other, we refer to them by their first names. No offense is intended.

three or four years before trial, he had grabbed her foot in a way she perceived to be sexual while they were goofing around in the living room. Eugenia later complained to Ramona that Fregoso Uribe had tried to sexually molest her. Fregoso Uribe thought that Ramona was angry with him because 10 to 12 years before trial, she told him that one of her eight children was not actually her husband's son. Fregoso Uribe thought that Ramona was worried that he would expose the secret when he was drunk.

Fregoso Uribe's attorney sought permission to impeach Eugenia's and Ramona's credibility with this information on cross-examination. The court ruled that nothing about Eugenia would be allowed because given the fact that she had left her son and daughter in Fregoso Uribe's care for four years, Fregoso Uribe's claim that Eugenia was thinking he molested her was inconsistent with any reasonable analysis. The trial court also ruled that no information about Ramona having a child with someone other than her husband would be admissible to impeach her credibility because there was no rational connection or nexus between this information and AOS's disclosures to her.

At trial, Ramona testified that she was the first adult to whom AOS reported that Fregoso Uribe had been having sexual contact with her. Eugenia testified that AOS told her and Mauricio that Fregoso Uribe had sexual contact with AOS on numerous occasions.

*Colloquy Regarding Fregoso Uribe's Testimony*

Fregoso Uribe's attorney informed the court that "I've had a discussion with my client – same discussion we've had at the jail several times. My client . . . believes certain things should – he should be allowed to do on the stand." 5 Report of Proceedings (RP) at 940.

Fregoso Uribe apparently wanted to discuss on the stand events that had occurred in Mexico despite his attorney's advice "that that's not a good idea at all" and that he was

3

"vehemently opposed to that." 5 RP at 940. Fregoso Uribe thought there had been numerous inconsistencies in the trial testimony up to that point and "indicated that he feels there might be a conspiracy of friendship between the Prosecutor and the cop and the doctor – that they're friends since they hang out together." 5 RP at 940. Fregoso Uribe's attorney advised the trial court that "he does want to testify but I'm – I'm advising the court that I have some great concerns about it at this point." 5 RP at 941.

The trial court asked Fregoso Uribe, "As an Offer of Proof what about Mexico is relevant to this case?" 5 RP at 941. Fregoso Uribe apparently was concerned that the prosecutor would ask him on cross-examination about why he went to Mexico after learning about AOS's allegations against him. The trial court responded:

> Judge: I've – I've already instructed [the prosecutor] that she is not allowed to raise the issue of you fleeing to Mexico. If you'll recall she wanted to have that evidence presented to the jury as an inference of a consciousness of guilt – that you fled to Mexico because you believed yourself guilty.
> I did not let her do that in her case-in-chief. I did say that if you – if the defense opens the door to that topic then I would let her go through that door that the defense opens.
> So if you want to talk about fleeing to Mexico it's going to open the door to the Prosecutor asking you all kinds of questions and then making the inference for the jury. That's what I believe your attorney was probably trying to tell you but –
>
> [Fregoso Uribe]: Okay. Understood.

5 RP at 943.

The trial court then asked Fregoso Uribe, "What else is a concern for you?" 5 RP at 943. The following discussion occurred:

> [Defense counsel]: . . . [Fregoso Uribe] feels that with the – all these experts that came in and testified that they're very important people.
> And that he wants to be able to refute each and every point that they said on – in – in their – in the CDs and – and on the audios. That they said this – they didn't say this. He wants to go down each and every question. So . . . hundreds and hundreds of things that he wants to challenge.

4

Judge: It – it's – that door has been closed on that cross exam tactic of those witnesses. Those witnesses were on the stand here for you to cross examine everything that was in those audios and the videos. [The child forensic interviewer] was here this morning. That was your opportunity to cross examine her about that information.

[Defense counsel]: What he's saying is he wants to be able to talk about those –

Judge: He had the chance to talk about those –

[Defense counsel]: – no. He –

Judge: – in cross examination.

[Defense counsel]: – he wants to do it on the stand. He wants to do it on the stand now. He wants to say yeah she said this – but this is really bad. No she said this but she didn't do that – she should have done this. He wants to be able to say that.

Judge: Okay. You can't challenge the witness without the witness being able to – to be confronted by that challenge. You are sure able to testify about what you know. You cannot testify about what somebody else has told you. That's hearsay. You can testify about what you know personally.

[Fregoso Uribe]: Okay.

Judge: But there are Rules of Evidence that we all have to follow . . . . [T]hose Rules apply to the Prosecutor as well as the defense. . . . Neither one of you have a different rule book.

[Fregoso Uribe]: – no.

Judge: And – and my job is to sit up here and make sure they follow the rules and you follow the rules.

5 RP at 944-45.

The trial court then explained to Fregoso Uribe what would occur if he chose to testify:

Judge: And your attorney will be available to ask you questions – that's how it will start. You'll be sworn in and he'll ask you questions. Then when he's done asking questions then the Prosecutor is going to start asking you questions. *And you're going to have to answer the Prosecutor's questions as directly as possible*.

[Fregoso Uribe]: Correct.

Judge: Okay.

[Fregoso Uribe]: Can I avoid to answer questions?

Judge: You can claim the Fifth Amendment Right but not as a blanket statement. *You have to answer all questions presented to you by the Prosecutor. By electing to take the stand you are in effect agreeing to testify to all questions.*

[Defense counsel]: *You can't answer some and not others. You have to answer all. Or don't take the stand at all. Once you take the stand you have to answer all questions – from me or from her. Those are the Rules. That's the Evidence Rules.*

Judge: Prior to you being sworn in and sitting in that chair you have a Fifth Amendment Right not to testify or to say anything. But *once you elect to waive your Fifth Amendment Rights* – sorry – then – I apologize. *Then you have to answer questions that the Prosecutor asks you.*

[Fregoso Uribe]: Okay. Okay.

Judge: And – and I just want to reiterate that you do not have to testify. If you do not testify I'll give the jury an instruction that they're not to use the fact that you didn't testify again[st] you. The burden is still on the Prosecutor – and the State – to prove you guilty of these charges. You have no burden to prove your innocence.

[Fregoso Uribe]: Very well.

Judge: Okay.

[Fregoso Uribe]: So – I'm not going to testify.

Judge: You choose not to testify?

[Fregoso Uribe]: Not testify.

Judge: Okay.

5 RP at 946-47 (emphasis added).

*Conviction and Sentence*

The jury convicted Fregoso Uribe of first degree child rape, three counts of first degree child molestation, and indecent liberties with forcible compulsion.

The trial court imposed a sentencing condition requiring that Fregoso Uribe "not have any contact with minors without prior approval of DOC [Department of Corrections] and [his]

6

sexual deviancy treatment provider." Clerk's Papers (CP) at 110. Fregoso Uribe had four minor children between the ages of 2 and 9 at the time of sentencing. The trial court did not address or acknowledge Fregoso Uribe's constitutional right to parent before imposing this condition.

The trial court imposed LFOs, including a $200 criminal filing fee and a $250 jury demand fee. The court found in the judgment and sentence that Fregoso Uribe was presently indigent.

Fregoso Uribe appeals his convictions, the imposition of the community custody condition that prohibited his contact with his children, and the imposition of the criminal filing fee and jury demand fee.

## ANALYSIS

A.    ALLEGED MISSTATEMENT OF THE RIGHT TO TESTIFY

Fregoso Uribe argues that he was deprived of his constitutionally protected right to testify because the trial court's comments to him that he would have to answer all the prosecutor's questions misadvised him of his right to testify. We disagree.[2]

1.    Right to Testify

Article I, section 22 of the Washington Constitution provides, in relevant part: "In criminal prosecutions the accused shall have the right to . . . testify in his own behalf." The United States Supreme Court recognized a criminal defendant's right under the Sixth Amendment to the United States Constitution to "take the witness stand and to testify in his or her own defense" in *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).

---

[2] Fregoso Uribe did not object to the court's comments in the trial court. However, the State does not argue that Fregoso Uribe's failure to object precludes him from raising this issue on appeal. Therefore, we consider the merits of the claim.

The right to testify is fundamental, and cannot be abrogated by defense counsel or by the trial court. *State v. Robinson*, 138 Wn.2d 753, 758, 982 P.2d 590 (1999). The defendant alone has the authority to decide whether or not he or she will testify. *Id.* "In general, the waiver of a fundamental constitutional right must be made knowingly, voluntarily, and intelligently." *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996).

However, a defendant also has the right *not* to testify under the Fifth Amendment and article I, section 9. A defendant's right to testify in his or her own defense is in tension with the constitutional right against self-incrimination. *State v. Russ*, 93 Wn. App. 241, 245-46, 969 P.2d 106 (1998). "For that reason, it will generally be inappropriate for a judge to influence a defendant's choice between these two rights." *Id.* at 246.

It is the responsibility of counsel, not the trial court, to advise the defendant whether or not to testify. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835 (1994). The trial court is not required to advise a defendant of his or her right to testify in order for a waiver to be valid. *State v. Chapple*, 145 Wn.2d 310, 328, 36 P.3d 1025 (2001). And the trial court need not conduct an on the record colloquy in order to obtain the defendant's waiver of his or her right to testify. *Robinson*, 138 Wn.2d at 758-59.

If a defendant chooses to exercise his right to testify, he or she waives the right against self-incrimination regarding all matters properly addressed on cross-examination. *State v. Hart*, 180 Wn. App. 297, 304, 320 P.3d 1109 (2014). "But such waiver extends 'only to cross-examination which . . . is limited to the scope of the defendant's direct testimony.' " *Id.* (quoting *State v. Epefanio*, 156 Wn. App. 378, 388, 234 P.3d 253 (2010)). And ER 611(b) provides that "[c]ross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness."

We review de novo a claim that the trial court violated a defendant's right to testify. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

2.    Analysis

The trial court stated, "You have to answer all questions presented to you by the Prosecutor.  By electing to take the stand you are in effect agreeing to testify to all questions."  5 RP at 946.  The court also stated, "[O]nce you elect to waive your Fifth Amendment Rights . . . . you have to answer questions that the Prosecutor asks you."  5 RP at 946-47.  Fregoso Uribe apparently interprets these comments as telling him that if he testified he would have to answer all of the prosecutor's questions, regardless of the rules of evidence precluding questions beyond the scope of direct examination.

The trial court's comments could have been clearer.  The court preferably should have specifically stated that Fregoso Uribe would be subject only to cross-examination within the scope of direct examination.

However, viewed in the context of other portions of the colloquy, the trial court's statements cannot reasonably be interpreted as broadly as Fregoso Uribe suggests.  Directly before the challenged comments, the court told Fregoso Uribe that the prosecutor could not ask him questions about going to Mexico.  And the court told him that the rules of evidence applied to both sides and that the court's job was to ensure that both parties followed those rules.  It appears that the court was conveying to Fregoso Uribe that he could not pick and choose what questions to answer.

In addition, defense counsel stated that he had discussed with Fregoso Uribe both during trial and earlier in the jail whether he should testify.  As noted above, it is defense counsel's responsibility to advise the defendant about testifying.  *Lord*, 123 Wn.2d at 317.

9

We hold that the trial court's comments did not violate Fregoso Uribe's right to testify.

B.    CROSS-EXAMINATION REGARDING BIAS

Fregoso Uribe argues that the trial court violated his confrontation right by failing to allow him to cross-examine Ramona and Eugenia regarding past incidents that gave them reason to be biased against him, which would have impeached their credibility as witnesses. We disagree.

1.    Legal Principles

The confrontation clause of the Sixth Amendment and article I, section 22 guarantee the right of a criminal defendant to confront adverse witnesses. *State v. Lile*, 188 Wn.2d 766, 781-82, 398 P.3d 1052 (2017). The " 'principal means by which the believability of a witness and the truth of his testimony are tested' " is cross-examination. *Id.* at 782 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).

But the right of cross-examination is not absolute. *Lile*, 188 Wn.2d at 782. It is "limited by general considerations of relevance." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Relevant evidence is admissible unless otherwise prohibited, ER 402, but a defendant does not have a constitutional right to present irrelevant evidence. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). "Evidence is relevant if a logical nexus exists between the evidence and the fact to be established." *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999).

A defendant has a constitutional right to impeach a prosecution witness with bias evidence. *State v. Spencer*, 111 Wn. App. 401, 408, 45 P.3d 209 (2002); *see also State v. Fisher*, 165 Wn.2d 727, 752, 202 P.3d 937 (2009). However, the bias evidence must be "at least minimally relevant." *Fisher*, 165 Wn.2d at 752. Generally, evidence of bias is relevant to a witness's credibility and accuracy while testifying. *See id.*; *State v. Lubers*, 81 Wn. App. 614,

623, 915 P.2d 1157 (1996). Trial courts may limit cross-examination regarding bias if it is speculative or remote in time to trial testimony. *Fisher*, 165 Wn.2d at 753.

In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019).

We review a trial court's evidentiary rulings for abuse of discretion. *Id.* at 797; *Lile*, 188 Wn.2d at 782 (limitation of the scope of cross-examination). We review de novo whether an evidentiary ruling violated the defendant's right to present a defense. *Arndt*, 194 Wn.2d at 797.

2. Analysis

Fregoso Uribe wanted to cross-examine Eugenia about his claim that she was angry with him because she believed that he had made unwelcome sexual advances toward her about three or four years before trial by grabbing her foot. The State objected to the admission of the alleged evidence of Eugenia's bias because it was not relevant to the charges. The trial court ruled that no cross-examination of Eugenia on this basis would be admissible because it was undisputed that Eugenia had left her children in Fregoso Uribe's care in the four years since the alleged incident.

Fregoso Uribe wanted to cross-examine Ramona about his claim that she was angry with him because about 10 to 12 years before trial, she had told him that one of her eight children was not actually her husband's son. He claimed that Ramona was worried that Fregoso Uribe would expose the secret when he was drunk. The State argued there was no nexus between Ramona's alleged secret and the fact that her statement to Fregoso Uribe occurred 10 to 12 years earlier made it irrelevant. The State further stated, "So what . . . would be the relevance that ten or

twelve years later . . . [Ramona's] method of controlling her deep, dark secret is exposing [Fregoso Uribe] publicly. . . ?" 3 RP at 470.

The trial court ruled that "any information about Ramona and having another child by a – not her husband is not going to be admitted as impeachment evidence to her credibility. It doesn't make sense. It doesn't make a rational connection or nexus to the disclosures that [AOS] made to her." 3 RP at 470.

We hold that the trial court did not abuse its discretion in excluding this evidence as irrelevant to show bias on the part of Eugenia or Ramona. Both alleged incidents were remote in time from trial, three or four years for Eugenia and 10 to 12 years for Ramona. And the claim of bias was speculative and was counterintuitive. The fact that Eugenia had left her children in Fregoso Uribe's care in the three or four years since she allegedly thought he sexually molested her tended to show that she was not biased against him. And the suggestion that Ramona would fabricate allegations against Fregoso Uribe because he knew her secret made no sense. In addition, we find no constitutional violation here.

We hold that the trial court did not violate Fregoso Uribe's right to present a defense by limiting the cross-examination of Eugenia and Ramona regarding bias.

C.      NO-CONTACT ORDER REGARDING CHILDREN

Fregoso Uribe challenges a sentencing condition that prohibits his contact with all minors without prior approval from DOC and his sexual deviancy provider because that condition restricts his contact with his own minor children. We hold that the trial court erred in failing to consider Fregoso Uribe's constitutional right to parent before imposing this condition.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, authorizes the trial court to impose "crime-related prohibitions" as a condition of a sentence. Former RCW 9.94A.505(9)

12

(2010). A crime-related prohibition prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10)[3]. We review the imposition of community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). A trial court abuses its discretion by imposing an unconstitutional condition. *Id.* at 677.

"More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). The right to the care, custody, and companionship of one's children constitutes such a fundamental constitutional right. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "Sentencing courts can restrict fundamental parenting rights by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). However, these conditions must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *Warren*, 165 Wn.2d at 32. Any "crime-related prohibitions affecting fundamental rights must be narrowly drawn" and "[t]here must be no reasonable alternative way to achieve the State's interest." *Id.* at 34-35.

When a sentencing condition prohibits a defendant's contact with his or her own children, the trial court must address the defendant's constitutional right to parent. *See Rainey*, 168 Wn.2d at 377-80; *State v. Torres*, 198 Wn. App. 685, 689, 393 P.3d 894 (2017). And the court should

---

[3] RCW 9.94A.030 has been amended since the events of this case transpired. Because those amendments do not affect our analysis, we cite to the current version of the statute.

conduct this inquiry on the record. *State v. DeLeon*, ___ Wn. App. 2d ___, 456 P.3d 405, 408 (2020).

Here, the trial court ordered Fregoso Uribe to have no contact with minors "without prior approval of DOC and [his] sexual deviancy treatment provider." CP at 110. Because the no-contact condition implicates Fregoso Uribe's fundamental right to the care, custody, and companionship of his children who are minors, "[t]he question is whether, on the facts of this case, prohibiting all contact with [his children], including indirect or supervised contact, is reasonably necessary to realize [a compelling State interest]." *Rainey*, 168 Wn.2d at 379. In order for the sentencing condition to be constitutionally valid, "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35.

The trial court did not acknowledge Fregoso Uribe's constitutional right to parent when imposing the sentencing condition prohibiting contact with all minors without prior approval of DOC and his treatment provider. Although the State clearly has a compelling interest in protecting children from harm, the State failed to demonstrate how prohibiting contact between Fregoso Uribe and his children was reasonably necessary to effectuate that interest. And the record does not show that the court "sensitively imposed" the no-contact condition in a manner that was "reasonably necessary" to further the compelling interest of protecting children. Finally, the court did not determine whether there was a reasonable alternative way to accomplish that interest.

This court in *DeLeon* vacated a trial court's order that the defendant have no contact with his biological children under similar circumstances. 456 P.3d at 407-08. Because the trial court in that case did not address the constitutional right to parent, this court remanded for the trial court to conduct the required analysis on the record. *Id.* at 408.

The State argues that the trial court's restriction of Fregoso Uribe's contact with his minor children was reasonable and crime-related because Fregoso Uribe was convicted of raping and molesting his young niece, whom he frequently cared for like a parent. Restricting Fregoso Uribe's contact with his children without the prior approval of DOC and his sexual deviancy treatment provider may be reasonably necessary to protect his children, and we render no opinion on that issue. But the trial court erred by not considering on the record the effect of the restriction on Fregoso Uribe's constitutional right to parent.

We strike the sentencing condition prohibiting Fregoso Uribe from contact with all minors without prior approval of DOC and his sexual deviancy treatment provider, and we remand for the trial court to reconsider imposition of the sentencing condition under the standards discussed above.[4]

D.      IMPOSITION OF LFOS

Fregoso Uribe argues, and the State concedes, that this court should strike the criminal filing fee and jury demand fee from his judgment and sentence.

In 2018, the legislature amended (1) RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on an defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c); and (2) RCW 10.46.190, which now prohibits the imposition of the jury demand fee  on a defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c). These

---

[4] Fregoso Uribe also argues that the trial court erred in imposing this condition because it effectively prohibits him from having any contact with his four minor children while he is incarcerated. He contends that because he will not be provided with a sexual deviancy provider until after incarceration, he will not be able to obtain the requisite approval to have contact with his children while he is in prison. Because we strike the sentencing condition based on the reasons discussed above, we do not consider this argument.

amendments apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

At Fregoso Uribe's sentencing, the trial court found that Fregoso Uribe was presently indigent. But the record is unclear if the trial court found him indigent based on the definitions in RCW 10.101.010(3)(a)-(c). On remand, the trial court must consider the imposition of LFOs under the current law.

CONCLUSION

Accordingly, we affirm Fregoso Uribe's convictions, but we strike the sentencing condition prohibiting Fregoso Uribe's contact with his children and remand for the trial court to reconsider that condition and to consider the imposition of LFOs under the current law.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

SUTTON, J.